LEWIS BLIND STITCH MACH. CO. v. ARBETTER FELLING MACH. CO.

(Circuit Court of Appeals, Seventh Circuit. October 6, 1914.)

No. 2088.

PATENTS &#x25E6;&#8680;328—INFRINGEMENT—SEWING MACHINE.

The Lewis patent, No. 862,830, for a sewing machine for blind stitching, *held* not infringed by the machine of the Arbetter patent, No. 690,385, over which priority of invention is claimed for the Lewis patent; the mechanical means employed in the Arbetter machine having not only been independently conceived, but differing in principle of operation.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by the Lewis Blind Stitch Machine Company against the Arbetter Felling Machine Company. Decree for defendant, and complainant appeals. Affirmed.

The appellant is complainant in a bill filed in the District Court, charging infringement of its patent No. 862,830, issued August 6, 1907, upon application filed August 2, 1902, for a sewing machine, and this appeal is from a decree on final hearing dismissing the bill for want of equity—the opinion of the trial court thereupon being reported in 208 Fed. 992.

The specification of the patent in suit states: "My invention relates to sewing machines, and more particularly to blind stitch sewing machines; that is, machines making stitches which enter and leave the same side of the

goods, and which are locked or enchained upon the said side. The object of my invention is to simplify the construction of blind stitch sewing machines, and to provide mechanism whereby stitches can be made which are invisible on the opposite side of the goods to that on which the stitches are made, but which are locked or enchained upon the side or face of the goods upon which the needle enters, and which can be also concealed or nearly so on the side of the goods in which the stitches are made."

The specifications and drawings are elaborate in description of the machine and its various parts, which are in their nature somewhat complicated, but are largely of the familiar type of domestic sewing machines with their foot mechanism, needle control, and hook and bobbin devices; and the machine is of the lock stitch type for making blind stitching, in many respects of an old and familiar type in an old art. The patent contains 79 claims, but only 10 of these claims are involved in the charge of infringement; and the claims so involved are classified in the appellant's brief into three groups, namely:

I. The first group comprises the main subject-matter of controversy, and consists of two claims, 72 and 76, reading as follows:

"72. In a sewing machine for blind stitching, the combination with stitch-forming mechanism of means for presenting the goods to the needle with the edge adjacent to the needle inclined to the path of reciprocation of said needle."

"76. In a sewing machine for blind stitching, the combination with stitch-forming mechanism of means for presenting the goods to the needle with the edge adjacent to the needle inclined to the path of reciprocation of said needle, and an edge guide for the goods."

II. The second group is referred to as the "inclined hook" claims, also consisting of two claims, and numbered 42 and 71, reading as follows:

"42. In a sewing machine, the combination with a reciprocating needle of a rotary hook containing a bobbin and inclined to the path of reciprocation of said needle, the rear face of said hook co-operating with said needle to take the loop."

"71. In a sewing machine for blind stitching, the combination with a needle of a rotary hook inclined to the path of reciprocation of said needle, said hook having an inclined cast-off surface, and an offset for guiding the thread onto said cast-off surface."

III. The third group is referred to as the "needle deflection" claims, numbered 45, 46, 48, 50, 51, and 53, reading as follows:

"45. In a sewing machine for blind stitching, the combination with a guide of stitch-forming mechanism, including a needle, and means for holding said needle under tension and in alignment while passing said guide.

"46. In a sewing machine for blind stitching, the combination with stitch-forming mechanism, including a needle arranged with its axis at an angle to the path of reciprocation, of a guide for the goods, and a needle guide for deflecting said needle."

"48. In a sewing machine for blind stitching, the combination with stitch-forming mechanism, including a needle having its point substantially in line with its side, of a guide for the goods, and a needle guide for deflecting said needle before it enters the material."

"50. In a sewing machine for blind stitching, the combination with stitch-forming mechanism, including a needle having its point substantially in line with one of its sides and having its axis inclined to the path of reciprocation, of a back guide and a needle guide for deflecting said needle.

"51. In a sewing machine for blind stitching, the combination with stitch-forming mechanism, including a needle having its point substantially in line with one of its sides and having its axis inclined to the path of reciprocation, of a reciprocating back guide, a needle guide, and means for positively limiting the movement of said back guide toward said needle."

"53. In a sewing machine for blind stitching, the combination with stitch-forming mechanism of a rigid needle guide for deflecting the needle before it enters the material, a movably mounted back guide, and means for positively limiting the movement of said back guide toward said needle."

The alleged infringing machine of the appellee purports to be made under patent No. 690,385, issued to W. Arbetter, January 7, 1902, on application filed August 13, 1901, for "sewing machine for felling," together with subsequent Arbetter patents. While this patent was granted prior to the above-mentioned grant to Lewis and upon an application filed nearly a year prior to the Lewis application, it is contended on behalf of the appellant that the proof establishes priority of invention in favor of Lewis, both through proceedings in the Patent Office and through proof in the present record. Such priority is controverted, however, on behalf of the appellee and forms one of the issues in the case.

The defenses set up are invalidity of the claims in suit, and noninfringement of any of the claims, if any thereof are valid. The ruling of the District Court sustains the defense of noninfringement.

George T. May, Jr., and Edward Rector, both of Chicago, Ill., for appellant.

Frederick P. Fish and Nathan Heard, both of Boston, Mass., for appellee.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The complainant, Lewis Blind Stitch Machine Company, appeals from a decree which dismisses its bill charging the defendant, Arbetter Felling Machine Company, with infringement of its Lewis patent, No. 862,830, for "sewing machine," issued August 6, 1907, on application filed August 2, 1902. Its patent claims in controversy are 10 in number (out of 79 claims allowed in the grant), which are classified in three groups throughout both briefs, and thus described in complainant appellant's brief: (1) Claims 72 and 76, relating to "a combination of stitch-forming mechanism and work-presenting mechanism" for "novel and advantageous results"; (2) claims 42 and 71, being the "inclined hook" claims; and (3) claims 45, 46, 48, 50, 51, and 53 as "needle deflection" claims. In the specifications the invention is described as relating "particularly to blind stitch sewing machines; that is, machines making stitches which enter and leave the same side of the goods, and which are locked or enchained upon the said side."

As the defendant's alleged infringing mechanism is made under Arbetter patents, whereof No. 690,385 (for a "sewing machine for felling") is the fundamental grant, on an application filed August 13, 1901 —a year prior to the Lewis application—for which patent issued January 7, 1902, and is substantially followed by the defendant's machine, the complainant has rightly been burdened with the unusual requirement to prove actual priority of the Lewis machine as patented over that of Arbetter, as well as proving infringement of the Lewis claims; and the adequacy of proof upon this issue of priority in respect of the main claims (72 and 76) is one of the serious controversies in the arguments. Validity of the claims in suit under other prior patents in evidence is challenged, and a considerable portion of the argument is directed to that issue. The rulings of the trial court, however, sustain the defense of noninfringement of all these claims, as the ground for dismissal of the bill, and the opinion expresses the view that priority over Arbetter's machine is established and assumes the validity of the several claims. Nevertheless, counsel for the defendant ap-

pellee urges three propositions for decision on this appeal (beside the contentions of noninfringement in any view of the claims), in substance: First, that the defendant's machine is an independent development, borrowing nothing from Lewis, and has neither "obtained substantially the same result," nor "obtained its result in substantially the same way," or by the same means; second, that if the Lewis claims read in any sense upon the defendant's machine, they are invalid as mere claims for a result and met in the prior art; third, that Arbetter's invention was prior, and any Lewis claims reading thereon are invalid for that cause. We believe the issue of infringement as presented in this record may rightly be treated as the primary one for determination under the several claims involved, and that, if the decree is sustainable for noninfringement, neither issue of priority over Arbetter nor of validity of the Lewis claims requires consideration, although the foregoing first and second propositions may enter into consideration on the inquiry of infringement.

The opinion of Judge Sanborn, as the trial judge, is reported in 208 Fed. 992, and its excellent and ample preliminary statement of the matters of fact involved in the controversy may be consulted for understanding thereof without repetition here. Its descriptions of the mechanisms respectively of Lewis and Arbetter, their operations and distinctions, and the problems met and solved by each, leave little to be stated additionally; and its summary of the extended proceedings in the Patent Office, disclosed by the Lewis file wrapper—upon which claims were ultimately allowed, over reference to Arbetter's prior patent (on ex parte affidavit of priority of Lewis) and other references,— and as well the summary of proceedings on interference between rival applications of Lewis and Arbetter, referred to as the "seam application record," may become both pertinent and instructive for interpretation of the claims in suit. The evidence leaves no room for doubt that Arbetter's conception of the entire mechanism embraced in his patent No. 690,385, was an independent one, not derived from the Lewis conception in any respect; but it is assumed for the purpose of the present inquiry—without so deciding, as hereinafter explained—that Lewis proves priority in his conception and reduction to practice of such inventions as his later application sets forth, and in that view it is unquestionable that the scope thereof, as clearly disclosed and allowed, cannot be narrowed because of this independence of the Arbetter conception or priority of application thereupon. It is equally, plain, however, that its scope cannot be enlarged beyond the original conception and disclosure of Lewis (as carried out in changes made in his old machine in evidence) to embrace the Arbetter disclosure of means and function, through the subsequent amendments introduced by Lewis in the long course of his proceedings in the Patent Office.

Neither of these patentees claims a pioneer invention in sewing machines for blind stitching, as many prior machines had accomplished such work; but the appellant contends that the Lewis invention is entitled to rank as a pioneer in producing "a machine for doing blind-stitch concealed-effect felling," and the opinion below states that the Lewis machine "was the first successful machine to do such felling."

The nature of this invention remains to be considered, under the above-mentioned assumption of priority in machine felling; but this distinction between the two patents in reference thereto may well be borne in mind: While Arbetter's patent is both entitled and specified as a "sewing machine for felling," for which a patent issued several months prior to the filing of the Lewis application, and the ensuing specifications of Lewis refer to his stitching as "concealed, or nearly so, on the side of the goods in which the stitches are made," they do not mention the well-known and important work in the manufacture of clothing classified as felling, but do specify work which requires another familiar class of stitching called "overseaming" or "cross-seaming," which does not require the "concealed effect" of felling Nor do we understand the testimony introduced in support of priority therein (aside from Lewis' personal testimony) to establish clearly that the commercial use of this Lewis original machine in evidence extended to actual felling work as above defined.   In the arguments of counsel much discussion is directed for and against this proposition, stated in an opinion of the Court of Appeals for the District of Columbia (Arbetter v. Lewis, 34 App. D. C. 491), on the seam-application interference proceedings between Lewis and Arbetter, in reference to the Lewis conception and structure, namely, that "concealment of either thread was as foreign to his original design as it is impossible of accomplishment in his seam."   We are of opinion, however, that decision of that issue is not needful herein, so that consideration thereof may rightly be reserved for hearing in the seam-application case, mentioned in the briefs as pending in the District Court.

Both Lewis and Arbetter necessarily used in common for their machines the general means and features of the old sewing machine art, and both inventions, were limited to the special means devised for its new method of machine stitching.   Referring to the descriptions of each of their particular means and its operation presented in the opinion below, we believe it to be plain that each proceeded upon and carried out a different scheme of means to accomplish his purpose.   As correctly stated in the brief for appellant:

"The essential mechanism of any lock stitch machine consists of (a) the goods-handling mechanism and (b) the stitch-forming mechanism. The goods-handling mechanism properly positions the goods to receive the needle and feeds the goods along between needle reciprocations. The stitch-forming mechanism handles the thread. It consists essentially of the thread-carrying needle, the co-operating shuttle or hook mechanism and the thread-control devices, such as take-up, tension, etc."

These definitions, however, may well have the further explanation that the goods-handling means of the prior art generally concurred in feeding the goods "in a straight line fore and aft of the machine," with other means to permit turning and shifting to follow the  desired line of stitching.   The Lewis machine departs from this usual method, and provides for feeding and holding the goods in a direction diagonal to the needle, so that, when the goods are bent around the edge of the back guide (table edge), the "needle-to-edge relation" is obtained for the stitch-making, "with the edge adjacent to the needle inclined to the path of reciprocation of said needle."   We understand the stitch·

forming mechanism to be of the old. art in its "vertically reciprocating needle," carried in a needle bar and "shogged" laterally to form two rows of stitches, wherein the only features of novelty claimed are the two elements referred to as the "inclined hook" and the "needle deflection" means, each of which is to be considered later in reference to the particular claims and charges of infringement. The above mentioned needle-to-edge relation reiterated in the appellant's argument as the conception of Lewis on which his invention hinges, is the normal relation in hand work for felling and overseaming. Undoubtedly this relation was dominant in the mind of Lewis (and of Arbetter likewise) as a result sought and in some measure attained by the means devised, but we do not understand it to be the conception in the sense of the patent law for which monopoly is authorized. It was equally open (as well as obvious) to subsequent inventors of other means for like object. From the Lewis specifications and claims, and all consistent testimony as well, it plainly appears, as we believe, that his entire conception of means was the above-stated departure from the normal goods-presenting means and methods in his new provisions, together with the normal stitch-forming means merely adapted to such diagonal and edgewise arrangement of the goods.

The Arbetter conception and device, however, clearly differs from that of Lewis both in his approach to the solution and in his device of means, namely: Following out the normal method of feeding and presenting the goods for stitching, his attention and device were entirely directed to the stitch-forming means for obtaining the necessary needle-to-edge relation. That Arbetter succeeded therein in providing stitch-forming mechanism which is commercially effective for machine felling, extensively required in the manufacture of clothing, is established by the testimony; and we believe it to be likewise established, not only that his device is more effective than that of Lewis for such work, but that such efficiency is unmistakably due to his stitch-forming means and methods. Therefore, if such mechanism is not within the scope of invention in means allowable to Lewis, the defendant appellee is entitled to affirmance of the decree.

1. The claims chiefly relied upon for the charge of infringement are claims 72 and 76. As stated in the appellant's brief:

"The invention covered" thereby "is beyond doubt the factor of greatest importance in this patent, and claim 72 is the more important claim of the two. It covers the foundation invention."

Claim 72 reads:

"In a sewing machine for blind stitching, the combination with stitch-forming mechanism of means for presenting the goods to the needle with the edge adjacent to the needle inclined to the path of reciprocation of said needle."

Claim 76 is identical therewith, except that it states in addition, "and an edge guide for the goods."

These propositions are undisputed (as indicated in our foregoing mention of the respective conceptions and devices): That the defendant's (Arbetter) machine contains neither (a) the stitch-forming mechanism,

(b) the goods presenting means, nor (c) the edge guide described in the specifications of the Lewis patent, and that it is entirely free, both from its independent origin and its distinctive co-operation of means, from imputation of colorable evasions thereof. The charge of infringement, therefore, is predicated solely on the contentions that the Lewis mechanism is entitled to the "broad view applicable to inventions of primary attainment"; that it "falls in the highest class," as a "pioneer in concealed-effect machine felling," so that these claims must "receive liberal interpretation and a wide range of equivalence," embracing the Arbetter mechanism for analogous work; and that this view arises mainly, if not wholly, through the "novelty of his needle-to-edge relation" in machine stitching. It is true, as before stated, that both machines have the needle-to-edge relation for stitching and that both are capable of doing felling with some measure of the desired concealment of stitches, although their difference in structure imposes well-defined difference in the extent of concealment in favor of the Arbetter machine. Whatever quality or rank may be assumed, however, for the Lewis invention, we believe these contentions for infringement to be untenable, when the distinction is observed (as heretofore noted) between the two inventions, both in the inventor's conception of the problem and in the means devised for its accomplishment.

Under the elementary law of patents no doubt is entertainable that Lewis could not obtain monopoly to exclude other inventors, either from use of the needle-to-edge relation in a sewing machine or from machine stitching to do felling work, and it follows necessarily that the doctrine of equivalents cannot be extended to create such monopoly of function by judicial interpretation. Without overthrowing the settled rule in that regard, we believe equivalence of means cannot be attributed to the Arbetter machine.

The Lewis conception was a radical and novel change from the normal method of feeding the goods in a straight line, so that the path of reciprocation to the needle is at an inclination to the line of feed. This is the "means for presenting the goods to the needle" which is plainly the single feature and element of novelty set forth in these claims—the edge guide, mentioned as an additional element in claim 76, being an essential part thereof to preserve mechanical inclination throughout the operation—and such means for obtaining and preserving the desired relation of fabric and needle undoubtedly constitutes the essence of invention for which the patent was granted.

Arbetter, on the other hand, independently sought and obtained that relation through a stitch-forming mechanism, whereby the normal feeding arrangement was preserved without change. His conception (seemingly in the natural direction) involved more difficulty in its mechanism, but proved more effective than that of Lewis for concealment of stitches, and perhaps for commercial work. For the purposes of this inquiry, it is sufficient to quote from claim 4 of his patent for definition of his novel mechanism, namely:

"Means to turn the stitch-forming means about an axis vertical to the work support that the needle may enter the material parallel with and then at an angle to the line in which the material is fed."

This oscillation means enables one row of stitches to be inclined and the other row to be parallel, so that concealment of the base row is secured, while in the Lewis method both rows of stitches are inclined and like concealment of the base row cannot be accomplished. The "path of reciprocation of said needle" referred to in the Lewis claims is constantly in the same direction, while Arbetter obtains necessarily two paths of reciprocation at angles to each other.

We believe, therefore, that not only is identity of means and operation disproved, but that fundamental differences therein produce material differences in their felling work, and that the alleged infringement of claims 72 and 76 is without support under the facts in evidence. Neither review nor citation of the numerous authorities called to attention for such support seems needful, as none of them impresses us to bear in favor of the contention. The important case of Reece Button-Hole Mach. Co. v. Globe Button-Hole Mach. Co., 61 Fed. 958, 10 C. C. A. 194, in reference to liberality of interpretation for a meritorious patent, is greatly relied upon for application to these claims; but we do not understand the facts there involved, nor the notable opinion of Judge Putnam (speaking for the Circuit Court of Appeals for the First Circuit) to be applicable here. As stated in that opinion, the question involved was the defendant's contention that the patent in suit "can in no event cover a machine of which the frame is stationary and the plate moves," for the reason that it specifies that the frame of the device moves and the plate is fixed, and this despite the fact that "the defendant's machine accomplished the same result by mere reversal of this action." It further states that the defense rests on the proposition that the entire novelty "turns on the fact that the plate is fixed and the frame moves," but on review of the facts as to the actual invention this proposition was overruled, as destructive of "the entire value of this most important, useful, and hitherto profitable invention." The ultimate ruling against the narrow interpretation sought by the defense appears in these words:

"The principle of his stitching mechanism is clearly such that the relative movements between it and the plate are essential, while the absolute movement—that is, whether the plate moves or the frame moves—are nonessentials."

For its basic distinction from the case at bar, as above reviewed, no additional comment is required.

2. The claims referred to as the "inclined hook claims" are numbers 42 and 71, wherein the only feature of novelty asserted is "the inclination of the rotary hook to the path of needle reciprocation," as it is conceded that "such a rotary air hook was not new with Lewis," and the advantage of its inclination, as specified, is that "more ready discharge is accomplished by bringing the beak of the hook further toward the outer or front face of the hook, thus having less distance to carry the thread forward." As otherwise stated by complainant's expert, it "facilitates the casting off of the loop of needle thread while still retaining the periphery of the hook close to the stitch-forming point." The need and benefit of this arrangement in the Lewis mechanism, for the required speed and accuracy of operation, is unquestionable. We shall

not undertake, however, to analyze the refinements of reasoning upon which experts and counsel on behalf of the appellant contend, both for invention in this arrangement over the conceded prior art showing inclination of hook to the path of needle reciprocation, and for infringement thereof by the defendant's different inclination of hook.  It is deemed sufficient for affirmance of the ruling of noninfringement, that the evidence establishes these propositions:  (1) That the two mechanisms in suit differ (a) in the type of hook used; (b) in the direction of inclination thereof; and (c) in the function of its inclination.  (2) That the Lewis hook of the exhibit "Lewis Old Machine," of the type known as "parallel hook," was merely tilted for his improvement to the inclined arrangement of the patent for the above-mentioned "facility of casting off."   (3) That the Arbetter hook is distinctively of the other type, known as "vertical hook," and its inclination is away from the vertical, so that its function cannot be identical with the Lewis inclination.

3. In reference to the six claims denominated the "needle deflecting claims," we adopt the conclusion stated in the opinion below for denial of infringement, namely:

"That the defendant does not use the Lewis needle guide, but merely the old form found in a number of earlier patents.  If the defendant's needle is put under tension, it is a matter of accident, and does not result from the construction or hanging of the needle, nor from the way the guide is made or adjusted."

The suggestion in the brief of counsel for appellant that the old needles in evidence, taken from machines of the defendant, support "the likelihood of at least intermittent infringement," does not impress us to merit discussion.

The decree of the District Court is affirmed.