DUDLO MFG. CO. v. VARLEY DUPLEX MAGNET CO. (two cases).

(Circuit Court of Appeals, Seventh Circuit.   October 1, 1918.)

Nos. 2487, 2488.

1. CORPORATIONS ⏩30(6)—ACTS OF CORPORATORS—ESTOPPEL.
    Where a corporation was organized to take over the business of a partnership, which by contract acknowledged patent infringement and agreed to cease, *held*, that any estoppel arising from the contract was effective against the corporation, and as it continued the old-method manufacture it was estopped to deny infringement.

2. PATENTS ⏩328—INFRINGEMENT.
    The Anderson patent, No. 644,311, for winding coils or helices for electrical apparatus, claims 1, 2, and 3, *held* infringed; it appearing defendant used a single core, etc.

3. PATENTS ⏩328—CONSTRUCTION—INFRINGEMENT.
    The Anderson patent, No. 644,312, for an electric helix, *held* infringed, when defendant manufactured special coils in a stick, etc., which were not cut until the entire stick was wound, etc.

4. PATENTS ⏩177—EXTENT OF MONOPOLY.
    A patentee cannot monopolize all means of effectuating a function, whether it be that of the entire combination or of any element thereof.

5. PATENTS ⏩26(1), 245—CONSTRUCTION.
    A machine which requires the mediation of an operator for coaction between the elements may be no less a true combination than one securing coaction automatically; and while in a primary patent substitution may not avoid infringement, yet where the invention is in a specific mechanism substitution will avoid infringement.

6. PATENTS ⏩328—CONSTRUCTION—INFRINGEMENT.
    The Anderson patent, No. 654,583, claims 8 and 46, for a machine for winding helices for electrical purposes, *held*, in view of the prior art, limited to the special mechanism, and not infringed.

Appeals from the District Court of the United States for the District of Indiana.

Two suits by the Varley Duplex Magnet Company against the Dudlo Manufacturing Company. From decrees for complainant, defendant appeals. First decree affirmed, and second reversed, and cause remanded, with directions to dismiss the bill.

Edward Rector, of Chicago, Ill., for appellant.

James K. Bakewell, of Pittsburgh, Pa., and M. A. Keller, of New York City, for appellee.

Before BAKER, MACK, and EVANS, Circuit Judges.

⏩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MACK, Circuit Judge. The two cases were heard together in the District Court and the appeals were argued together in this court. No. 2487 involves letters patents Nos. 644,311 and 644,312, and No. 2488, letters patent No. 654,583, all granted to one Anderson and assigned to appellee.

Letters patent No. 644,311, for a method of winding coils or helices for electrical purposes, and letters patent No. 644,312, for an electrical helix, were held valid and infringed by defendant as to all of the claims. Claim 2 of No. 644,311 reads as follows:

"The method of winding helices for electrical purposes consisting in simultaneously winding a plurality of helices upon separated zones of a single core, inserting sheets of insulating material between the superposed layers of the helices; each sheet being common to all the helices, and then separating the helices by transversely severing said sheets and core between the adjacent helices."

Claim 1 omits the last element as to separation of the helices; claim 3 specifies in detail that each layer of helix is followed by the insulating material. The claims of No. 644,312 are:

"1. An article of manufacture consisting of a plurality of helices for electrical purposes, wound in layers on a single core, in combination with individual sheets of insulating material inserted between the layers and extending throughout all the helices, substantially as described.

"2. An article of manufacture consisting of a plurality of helices for electrical purposes, wound in layers on separated zones of a single core, in combination with layers of insulating material alternating with the layers of the helices and being common to all the helices, substantially as described."

Plaintiff was a pioneer in the manufacture of helices in series, instead of, as theretofore, in units. It thereby secured a greater uniformity of product and a saving in the cost of manufacture. Defendant sought to obtain the same result in substantially the same way. Like the plaintiff, it used, between the layers of windings, sheets of paper common to all of the series of helices, thereby securing the desired uniformity of tension.

## Method Patent.

[1, 2] But it urges in support of its contention of noninfringement of the method patent, first, that it uses no single core; second, that it severs the series of helices into units by cutting the inserted sheets of insulating material between the adjacent units during the winding of the layer of wire thereon and not after the stick of helices has been fully wound.

1. As to the absence of a core.

A. Defendant is the successor of a copartnership, the members of which own the controlling interest in defendant. A minority interest is owned by its largest customer who at one time had been a customer of appellee. This copartnership had been charged by plaintiff with infringement of the patents in suit. By a contract of settlement with plaintiff, the firm had confessed the infringement and had agreed not to infringe thereafter. While defendant's minority stockholder claims to have had no knowledge of the contract at the time he made his investment, the circumstances surrounding the transaction are such that

the trial court was justified in disregarding this testimony. But whether or not he had such actual knowledge at that time is immaterial. The evidence abundantly justifies the conclusion that the corporation was primarily formed for the purpose of evading the obligations imposed by the contract; the corporation took over the business as it was; under these circumstances, any estoppel arising from the contract as against the copartnership, should be deemed equally effective as against the corporation. And inasmuch as defendant made no change whatsoever in the method of manufacture in so far as the core is concerned, it is estopped to deny infringement in this respect.

B. But irrespective of estoppel, defendant, in our judgment, does use a single core. Plaintiff preferentially covers the spindle with a prepared tube to which the first layer of wire of each coil is fastened or anchored. Defendant first rolls four or five layers of paper on the mandrel fastening them with a sticker and then ties the wire around this paper and the mandrel. Thereupon one layer of paper is fed in and while the first coil of wire is wound thereon, the coil and paper are shellacked. Then, ordinarily, three layers of paper are fed in and another winding begins. Until the paper is cut during this wire winding, there is a plurality of coils with a single core, the shellacked paper. Whether or not, at the time of cutting, the upper layer has been completely wound and whether or not it is intended thereafter to wind additional layers so as to produce in the end a coil of only two or of more layers of wire, is immaterial; in either case there is infringement of plaintiff's method of producing the coil by the use of a single core.

2. As to the stick of helices.

A. Concededly, in some instances, whether because of defective machinery or defective operation, defendant, contrary to its ordinary method of manufacture, did not separate the single stick of helices into units until after the winding was complete. Furthermore, some special coils were always manufactured in this manner. In all such cases, infringement is clear.

B. While ordinarily defendant cuts the inserted sheets of insulating material between adjacent helices with sharp knives during the progress of each winding of the wire instead of sawing the stick into units after any desired length of wire is completely wound, infringement, in our judgment, is not thereby averted.

a. Even the smoothness which, defendant claims, results from its successive sharp cuttings of the insulating material, as against the single final sawings of the completed stick, is confined to the edges of the adjacent units; the two ends of the original stick frequently must be and are evened up by sawing. Obviously, however, defendant's more laborious and delicate practice, subject as it was to interruptions and omissions by the quite frequent breaking of the knives, aimed not at a better result but at a mere evasion of plaintiff's method. Plaintiff's inventive concept is the simultaneous winding of a plurality of coils on a common core or spindle in combination with the insertion of insulating layers common to the entire series of helices; it is immaterial thereto whether, because of the cutting of this common insulating material between the adjacent units before the winding is

finished, the units fall apart from one another when they are complete-
ly wound, or whether the stick is to be severed into its units by sawing
the insulating material between the adjacent helices only after the
winding is completed.

b. Moreover, in claim 1, there is no element of separation into units.
Defendant, however, contends that because of the statement in the
specifications that "the operation of severing the helices may be per-
formed by either the manufacturer or the user" and the further state-
ment that the ends of the helices may be left long, brought out to a
convenient point and there connected with each other as in series-
parallel or differential relation "this referring to the use of a number
of helices on the single tube, the act of severing them into individual
coils being omitted," claim 1 must be based upon these statements and
that thus limited it indicates the method of manufacturing the finished
commercial article of the product patent, the stick of completed but
unsevered coils, an article which defendant does not manufacture, at
least as a commercial product. We cannot, however, assent to this lim-
itation of claim 1. The claim evidently aims to cover the essentially
new step in manufacturing these coils, that is, inserting sheets of in-
sulating material in a manner common to all the coils of the series and
building up the coils by simultaneously winding the layers of wires on
the whole series. Whether a stick or units of helices be finally formed
is unessential; that will depend upon the needs of the manufacturer or
user. Ordinarily, separate units are desired; in that case, the stick
must be cut up; the cutting or sawing, however, involves no invention.

Even though under defendant's ordinary method of manufacture,
the sheets of insulating material, inserted between each two layers of
wire, are cut between adjacent units before the upper layer of wire is
completely wound thereon, so that the winding continues on the sever-
ed helices, this layer of wire is none the less properly described as su-
perposed upon sheets of insulating material common to all helices, and
not merely upon such sheets inserted between the layers of wire in sep-
arated helices.

### Product Patent.

[3] As plaintiff concedes that this patent is limited to the finished
"stick" of helices, it is not infringed by defendant's ordinary product,
the severed coils. But the special coils which defendant does occa-
sionally make in a stick and the usual coils which, because of break-
age of knives or for other reasons, are not cut until the entire stick is
wound, clearly do infringe.

### Machine Patent.

[4-6] Machines to make single coils of wire with interposed sheets
of insulating material were old; machines operated, however, by hand
power and without plaintiff's automatic mechanism; and machines to
wind series of spools of thread or wires in layers, but without the in-
terposed sheet of material common to all, were likewise old. While
Anderson invented the novel article and the novel method hereinabove
considered, his machine was not designed solely therefor; it was equal-
ly adapted to produce a single coil. This is not only expressly stated

in the specifications, but in some of the claims, both of those in issue and of those not in issue, the combination includes elements essential in producing plurality of coils, while in others it omits them.

As a machine to produce the old article, single coils of wire with interposed sheets of paper, the only novelty was in the patentee's specific mechanism; and as a machine to produce sticks of such coils it was but a new combination of elements, each old in its function, though in some respects of novel mechanism and operation. In no sense was it primary invention. What Anderson aimed at was a machine which, as stated in his specifications, would "more effectively, rapidly, and cheaply * * * wind strands into coils of superposed convolutions and introduce sheet material at intervals in the coils for the purpose of separating, protecting or restraining the convolutions." His inventive concept was the specific mechanism and its operation by which the problem that confronted him could be solved. Of this he says in the specifications:

"It is a comparatively simple problem to wind successive layers of wire; but to introduce between each layer the sheet of paper or other insulating material automatically and without stopping or slowing up the rotation of the winding-spindle, and to provide for the necessarily increasing length of such sheets, due to the increase in diameter of the coil, and to provide for the proper feeding of the paper to the rotating coil, which gradually increases in diameter, are problems which are not so easily solved, but which are solved by this invention."

It is unnecessary to consider all of the claims in issue; each was held valid and infringed; the broadest of them, claims 8 and 46 will suffice. They read as follows:

"8. The combination, with a winding spindle, of means for winding a plurality of coils or bobbins of material thereon, and means for inserting sheets of material at intervals in said coils, each sheet being common to all the coils."

"46. In a winding machine, the combination of a winding core or spindle, a rod or foundation carrying a plurality of guides for fibers, filaments, or strands, said spindle and rod or foundation being bodily movable with respect to each other for the purpose of forming layers upon the spindle."

That other claims add as additional elements the automatic features and the details of the feeding and cutting mechanism does not justify an interpretation of the claims in issue that would cover any and all means. A patentee cannot monopolize all means of effectuating a function, whether it be that of the entire combination or of any element thereof. Moreover, such an interpretation would carry the claims beyond the invention itself. Lewis v. Arbetter, 219 Fed. 557, 135 C. C. A. 325; King Philip Mills v. Kip Armstrong Co., 132 Fed. 975, 66 C. C. A. 45.

A machine which requires the mediation of an operator for coaction between the elements may be no less a true combination than one which secures such coaction by automatic device (Krell Auto Grand Piano Co. v. Story & Clark Co., 207 Fed. 946, 125 C. C. A. 394), and in a broad primary patent, the substitution of the one for the other may not avert infringement (Morley Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715; Columbia Wire Co. v. Kokomo Wire & Steel Co., 143 Fed. 116, 74 C. C. A. 310). But when, as

here, the invention is in the specific mechanism, a claim broadly worded, but necessarily in the light of the specifications, drawings, and inventive concept interpreted to cover only the patentee's novel mechanism including the automatic features, will not be infringed by the substitution of nonautomatic devices operating in a different way.

In claim 8, so read, "the means for inserting sheets of material at intervals in the coils, each sheet being common to all the coils," must be held to be the mechanism designed to introduce the sheet "automatically and without stopping or slowing up the rotation of the winding spindle." It is unnecessary to detail the differences in this mechanism and its operation in the two machines; it suffices that defendant's machine, concededly, does not operate automatically and its mechanism necessitates a slowing up of the spindle rotation for the sheet insertion. Furthermore "the intervals" at which plaintiff inserts the sheets are predetermined in its machine, one sheet following each layer of wire; and the increasing size of the successive sheets is automatically obtained. Necessarily as the coil increases in size, the inserted sheet covering and overlapping the layer of wire must likewise be enlarged; with defendant's machine, however, the operator must determine the successive sizes; he may and does insert not one but several sheets between each layer of wire; and he may, if he so desires, omit the sheet between any layers.

As to claim 46, literally interpreted, it would cover the ordinary thread-winding machines with a plurality of guides and would clearly be anticipated. But as an operative device the element of the means by which the spindle and rod are movable in relation to one another is implied in the claim. Limited as this must be to the mechanism described in the patent and its equivalents there is no infringement. Defendant's mechanism for controlling and reversing the direction of traverse of the wires electrically as they are wound upon the several coils differs entirely in character from that of the patent.

The decree in 2487 is affirmed; that in 2488 is reversed, and the cause remanded, with directions to dismiss the bill. Costs in either court that are not divisible as between two suits will be divided equally.